Larry STOKES and Sylvia STOKES d/b/a THE
WESTERN SHOP *v.* Sybil HARRELL, d/b/a THE
HARRELL AGENCY

85-204                                   711 S.W.2d 755

Supreme Court of Arkansas .
Opinion delivered June 2, 1986

*Compton, Prewett, Thomas & Hickey, P.A.,* by: *Floyd M.
Thomas, Jr.,* for appellants.

*Norwood Phillips* and *Laser, Sharp & Mayes, P.A.,* for
appellee.

Steele Hays, Justice. Larry and Sylvia Stokes have ap-
pealed from a directed verdict on behalf of Sybil Harrell, doing
business as The Harrell Agency.

In 1980 the Stokeses borrowed $25,000 and opened The
Western Shop in Hampton, Arkansas. At the same time the

Stokeses insured the contents for $20,000 from loss by fire through The Harrell Agency and a policy was issued by Granite State Insurance Company. About three years later Mr. Stokes told Mrs. Harrell that he wanted to increase the coverage to $50,000 and on April 11, 1983 a new policy was issued by Granite State in the amount of $50,000. On April 27 the shop was totally destroyed by fire.

The Stokeses and Granite State were unable to agree on the value of the contents and the Stokeses filed this action against Granite State and Sybil Harrell. The complaint asserted the plaintiffs had requested The Harrell Agency to obtain coverage based on the replacement cost of the contents, whereas the coverage provided was based on actual cash value. It alleged that if the recovery against Granite was less than the replacement cost of $50,000 the Stokeses were entitled to judgment for the difference against Sybil Harrell. At the close of the trial the court granted a motion for a directed verdict on the complaint against Sybil Harrell and the jury returned a verdict against Granite for $39,977.50.

On appeal the Stokeses urge that the trial court should not have granted a directed verdict on behalf of Sybil Harrell, but should have submitted that issue to the jury. We find no merit in their contention.

Appellants cite the rule that a directed verdict will be upheld on appeal only if reasonable minds could not reach different conclusions as to the proof, which must be judged in a light most favorable to the party against whom the motion is granted and after all reasonable inferences are drawn consistent with such proof. *Bussey* v. *Bank of Malvern*, 270 Ark. 37, 603 S.W.2d 426 (1980); *Bird* v. *Bird*, 254 Ark. 858, 497 S.W.2d 659 (1973).

The testimony revealed the Stokeses never asked for replacement coverage, but merely assumed that is what they had received when they took out the policy. The Stokeses amended their complaint during trial to allege negligence on the part of Mrs. Harrell for failing to inform them of the difference between replacement coverage and coverage based on actual cash value. Hence, the issue on appeal is whether Mrs. Harrell was under a duty to inform the Stokeses of replacement coverage, under the circumstances of this case.

We have not dealt with this question previously, but in some jurisdictions, under appropriate circumstances, courts have found such a duty on the part of the agent. See *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. 497, 402 N.E.2d 116 (1980); *Hardt* v. *Brink*, 192 F.Supp. 879 (W.D. Wash. 1961). However in those cases there was an established and ongoing relationship between the insured and the agent over a period of time, with the agent actively involved in the client's business affairs, and regularly giving advice and assistance in maintaining the proper coverage for the client. It was reasonable under those circumstances to find a special relationship, where the insured had come to expect and to rely on such advice, with a corresponding duty by the agent to advise. Other examples of "special circumstances" may be found in Barnett, Responsibility of Insurance Agents and Brokers (Matthew Bender & Co. 1979) § 3.12[3].

In general, those cases have not found a large following among the courts, rather, there is some tendency to adhere to the long established rule placing a responsibility on the insured to "educate himself concerning matters of insurance coverage." *Nowell* v. *Dawn-Leavitt Agency, Inc.*, 127 Ariz. 48, 617 P.2d 1164 (1980). The court in *Nowell* said:

> An insurance contract arises out of the insured's desire to be protected in a particular manner against a specific kind of obligation. It is his responsibility to adequately convey, albeit in laymen's terms, the nature of his wishes, in order to obtain the protection requested . . . An agent may point out to him the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under any obligation to respond. *Nowell, supra*, citing *Hill* v. *Grandey*, 132 Vt. 460, 321 A.2d 28 (1974).

*See also* Appleman, Insurance Laws and Practice (1981) V. 16A § 8831, p. 64. (Ordinarily there is no duty to advise the insured merely because of the agency relationship).

Under the circumstances of this case, we find nothing in the nature of a special relationship and we conclude there was no duty on the part of Mrs. Harrell to advise the Stokeses. The evidence revealed there had been no previous dealings between

them, and when the insurance was applied for there was only minimum contact. Mr. Stokes testified he had a brief conversation with Mrs. Harrell when he first applied for insurance, telling her he wanted coverage for $25,000, that "she said okay, and that was the end of it." He testified that when he raised his coverage about three years later, he briefly stopped by the agency on his way to the bank, told Mrs. Harrell to cover him for $50,000 and she just said "okay." He made no inquiries about coverage, he simply asked that his policy limits be raised to $50,000 and made no further comments to her regarding the insurance. We also note that Mrs. Harrell testified that while replacement coverage was available at a higher premium, it was her custom to obtain coverage based on actual cash value.

There is no merit in appellant's contention that the jury would have any basis for finding a duty on the part of Mrs. Harrell to advise. Under these circumstances, any responsibility to obtain further information as to coverage was on the Stokeses. See *Nowell, supra*. The trial court was correct in granting a directed verdict.

Affirmed.

PURTLE, J., not participating.